GEORGE ESTERLY & SON, PLAINTIFFS IN ERROR, V. M. T. VAN SLYKE AND A. HUSTON, DEFENDANTS IN ERROR.

Instructions to Jury. An instruction not warranted by the pleadings nor evidence, will require the reversal of the judgment, if it have a tendency to mislead the jury.

ERROR to the district court for Fillmore county. Tried below before MORRIS, J.

*Ryan Bros.*, for plaintiffs in error.

*John P. Maule*, for defendants in error.

REESE, J.

This is an action upon two promissory notes, each for $100, executed by defendants in error to plaintiffs in error for the purchase price of an Esterly harvester and binder. The cause has been tried three times. The first trial resulted in a verdict in favor of defendants; the second in a verdict in favor of plaintiffs for $90. These verdicts were set aside by the district court and new trials granted. The third trial resulted in a verdict in favor of defendants, which the court refused to molest, and proceedings in error are now prosecuted by plaintiffs in this court.

The answer filed by defendants in the district court admitted the execution of the notes, but presented the defense, substantially, that the harvester was taken on trial, but not purchased; that it was taken upon the representation that it was a good machine, properly constructed, and would do good work; if it failed to comply with the representations it was to be returned to the agent from whom it was received; that it was not as represented and failed to work, notwithstanding, after notice from them to plaintiffs' agents, they came to where it was and tried to adjust its parts so that it would cut and bind grain according to the purpose of its construction; that after the harvest was over, plaintiffs agreed with defendants that they should retain it until the next year, and that during the intervening time plaintiffs would repair it and make it a good and perfect machine, and one that would do good work; that relying upon the promises so made by plaintiffs, the defendants, on the 17th day of the following March, executed and delivered the notes upon which the action was brought. It is further alleged that plaintiffs failed to comply with their

agreement to repair the machine, and that it was "entirely useless" to defendant as a harvester and binder, and they returned it to plaintiffs.

Plaintiffs, by their reply, deny the allegations of the answer and allege that the harvester was sold upon a written warranty alone.

This warranty is set out in the reply, but need not be here copied as it is in the usual form, requiring notice of failure, and time to be allowed to remedy the defects, if any, and upon failure to furnish a new machine or refund the purchase price. This warranty was dated July 18th, 1881, the day of the delivery of the harvester to defendants. The reason why we do not think the terms of the warranty are material here is, that the witnesses upon both sides agree in their testimony that plaintiff had notice of the fact that defendants claimed that the harvester failed to work, and their agents and employes went to where it was at various times and worked with it and replaced defective parts.

The evidence as to whether the machine was actually purchased, or whether it was taken and retained on trial, was conflicting, and the finding of the jury upon that question would not, of itself, warrant the setting aside of the verdict as not supported by proof.

It is undisputed that defendants received the harvester in 1881, that they made an effort to use it during the harvest of that year, and in the following March executed the notes upon which this action is founded. There is nothing in the pleadings which puts in issue the authority of Van Slyke to act for both himself and Huston in procuring the machine. Huston does not deny it, but in effect concedes it in his testimony.

The ninth instruction given the jury was as follows: "On the part of the defendant the court instructs you that if Huston did not sign the printed warranty and did not

authorize Van Slyke to sign it, and did not afterwards ratify Van Slyke's act in signing it, he would not be bound by that written warranty if his acts afterwards did not ratify it. That is to say, if he did not afterwards do something in connection with it, showing that he accepted of it,—you are to view all of this testimony together, and from a view of all of the facts and circumstances, come to the conclusion as to whether it was purchased at the first—when the order was made; whether the subsequent act of Mr. Huston ratified it or whether it was purchased at the second time when the notes were agreed to be given, and whether there was any warranty at that time or not. Now if there were a sale of the machine and the notes were given for the machine, any promise that might have been made by the general agent or any one authorized by the company, of what would be done in the future, would neither alter the contract nor be a defense to the note. So I want the jury to distinctly understand if the contract was made at the time the notes were given, that was one thing; if they find that the contract was made at the time of the signing of this order, and these subsequent promises were made to induce these men to carry out their contract, it would not be a defense. Whatever remedies he might have would be in some other action. It is important to keep these things separate and by themselves, so as to let our best light settle these matters; as it is a matter for the enforcement of the law, whether justice is done by these parties as we see it, or whether they were entering on an ill-advised contract upon their side."

By this instruction the question of the authority of Van Slyke to make the original purchase or sign the instrument containing the warranty (or the subsequent ratification of what was done) is made a question of more or less importance to be decided by the jury. As we have seen, it was not in the case and it should not have been submitted to

the jury. *Newton Wagon Co. v. Diers,* 10 Neb., 284. *Turner v. O'Brien,* 11 Id., 108. *Steele v. Russell,* 5 Id., 211. *Smith v. Evans,* 13 Id., 314. We can not say that it was not prejudical, as it is clear that under it the jury might have entered into the inquiry and found against plaintiffs and in favor of Huston upon that point.

We do not deem it necessary to discuss all the propositions contained in this instruction; but we think that part by which the jury is instructed, in substance, that a change in the contract, after purchase, would afford no defense, is too strongly stated in plaintiff's favor. Suppose the harvester had been actually purchased in the first instance, upon the warranty contained in the order signed by Van Slyke. The notice, as we have seen, having been acted upon by plaintiff, was sufficient. Could it be maintained that it would not be competent for the parties to make a new contract, especially after the failure of the harvester, if there was one, by which the old contract would be set aside or rescinded, and a new one made? We think not. But it is said by plaintiffs that the warranty given in the first instance "contained notice that no other warranty could be given by any agent." We do not so read it. The provision is, that "No agent has any authority to change above warranty." This certainly would not prevent an agent from making a new contract of conditional sale upon the same warranty, as to construction and capacity, rather than have a machine returned as worthless. It is true he could not change the ("above") warranty, but he and the general agent, Leffingwell, could rescind the old contract and make a new one on substantially the same terms as the old (as is claimed by defendants), and a failure to comply with it might constitute a defense. The terms of the warranty, if made as claimed by defendants, were not changed from the old or printed one in any material part, but that the machine should be

made to comply with the original warranty of a good machine.

Again, as testified to by defendant Van Slyke, this agreement was made prior to the execution of the notes. Under it, it is claimed, they were given. They were accepted by plaintiffs, and they are now trying to enforce them by suit. It, of course, is charged with knowledge of the facts of their execution and delivery. *Chariton Plow Co. v. Davidson*, 16 Neb., 377. Having accepted the proceeds of the agreement, they ratified it, and are bound by its terms.

We do not see that the rule here stated is in any manner in conflict with that stated in *Wood, etc., Co. v. Crow*, 30 N. W. Rep., 609. In that case the only question was as to the authority of an agent to sell upon a different warranty from that which the purchaser knew was the only one he was authorized to give. In this case the notes were dated at a season of the year when such machines are not usually sold, and, as claimed by defendants, after the warranty given had failed and the conditions requiring notice and return had been waived.

The answer is quite voluminous, and in many respects is not clear or definite in its allegations. Matters of evidence are pleaded which might better have been omitted, and many questions were presented to the jury by the trial and instructions which, it seems to us, do not enter into the case, but which we do not think it necessary to discuss here. As we view the answer, there are but two defenses presented. One is, a failure of consideration for the notes; in other words, that the harvester was worthless when received. The other, that the sale was conditional, the machine taken on trial, and subject to the compliance on the part of plaintiff with the alleged agreement to make it a good machine. Either of these, if proven, would constitute a defense to the action. As to whether or not they are established is a question of fact for a trial jury to determine.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.