CLIFTON F. PLEDGER, NEXT FRIEND TO GROVER C. PLEDGER, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

FILED JUNE 18, 1903. No. 12,876.

1. **Evidence: DECLARATION AS PART OF THE RES GESTÆ.** A declaration to be competent evidence, as part of the *res gestæ,* must be made at such time, and under such circumstances, as to raise the presumption that it was the unpremeditated and spontaneous explanation of the matter about which made. Following *Union P. R. Co. v. Elliott,* 54 Neb. 299.

2. Admission of Evidence: DISCRETION OF COURT. The admission or exclusion of such evidence rests largely in the discretion of the trial court; such discretion is not an absolute discretion to be exercised arbitrarily but a legal discretion, the abuse of which constitutes reversible error.

3. ———: ———. Upon the face of the record in this case, *held*, that it was not an abuse of discretion to exclude the declarations offered in .evidence as part of the *res gestæ*.

4. Common Carrier: TRESPASSER. A party who boards a railway train with the intention of "beating" his way or "stealing a ride," and, to that end, secretes himself on such train, does not stand in the relation of passenger to the common carrier, and the latter owes him no active duty as such passenger.

5. Liability of Carrier. While the common carrier owes such person no active duty as a passenger, yet, if it uses unnecessary force to remove him, or expel him at a dangerous place, or while the train is moving at a dangerous rate of speed, and he thereby sustains injury, the carrier is liable in damages.

6. Instructions. In order to determine whether a particular paragraph of the charge to the jury is erroneous, it should be read in the light of the whole charge and the entire record.

7. Railway Company: TRESPASSER. A person who attempts to board a railway train in such a way as to avoid the payment of his fare, and intending to "beat his way," is a trespasser, and the railway company owes .him no duty to keep its right of way free from obstructions.

8. Error: AFFIDAVITS NOT IN RECORD. An assignment of error, based on the alleged misconduct of the jury, will not be considered, where such misconduct is ascertainable, only from affidavits not included in the bill of exceptions.

ERROR to the district court for Kearney county: ED L. ADAMS, DISTRICT JUDGE. *Affirmed.*

*George A. Adams, Lewis C. Paulson* and *E. C. Dailey,* for plaintiff in error.

*Webster S. Morlan, John L. McPheely, J. W. Deweese* and *Frank E. Bishop, contra.*

ALBERT, C.

This action was brought by the next friend of Grover C. Pledger, whom we shall hereafter call the plaintiff, to recover damages for personal injuries alleged to have been sustained by the plaintiff by the wrongful acts of the defendant.

The petition alleges that on the 24th day of August, 1900, the plaintiff boarded one of the defendant's trains at Hastings, intending to go to the state of Colorado; "that after said train started from the station in the city of Minden, and while the same was in motion and in said city and county, the said Grover C. Pledger was standing on the back end of one of said coaches, when, without any warning whatever, the defendant's employee in uniform, being a brakeman or other employee of defendant in and about said train, violently pushed the said Grover C. Pledger off said moving train, into a pile of cinders with sloping sides, negligently and carelessly, by the defendant and its employees, placed and suffered to remain piled up along and parallel with the defendant's track and in close proximity to said track, causing him to fall on the sloping side of said cinder pile and under said moving train, which train ran upon and over the right leg of said Grover C. Pledger, crushing and mangling the same, necessitating an amputation of said right leg about five inches below the knee, thereby permanently injuring and crippling said Grover C. Pledger for life, all without any fault or negligence upon the part of said Grover C. Pledger." The damages are laid at $15,000.

The answer, in effect, admits that the plaintiff sustained the injury alleged in the petition, but alleges that it was occasioned by the misconduct, carelessness and negligence of the plaintiff and without any fault or negligence on the part of the defendant. It appears from the evidence that the plaintiff boarded the defendant's train at Hastings and concealed himself on the front platform of the first passenger car, to avoid paying his fare. He thus rode until the train reached Minden, which was about 9:30 P. M., when the accident occured. As the train upon which he had been riding was leaving Minden, he was found lying beside the railroad track, with one of his legs so mangled that it was necessary to amputate it below the knee. Whether the accident was the result of his being pushed from the train by one of the defendant's employees, was

the principal question of fact in the case. One theory of the defense was that the plaintiff had left the train at Minden and was trying to board it again while it was in motion, intending to conceal himself as before. The jury returned a verdict for the defendant, and the plaintiff brings error.

The plaintiff was present at the trial and took the stand as a witness on his own behalf. He testified that the accident was the result of his being thrown from the train by one of the defendant's employees. He then offered to prove by three different witnesses that they arrived at the place where he was lying, not exceeding a minute after the accident occurred, that they heard exclamations of pain and that someone asked the plaintiff: "Were you on that train?" And he responded: "Yes, and the brakeman pushed me off, and I believe my foot is cut off." This evidence was excluded on the ground that the declarations of the plaintiff, at that time, were no part of the *res gestæ* and the ruling of the court in that behalf is now assigned as error.

It would unduly extend this opinion to attempt a review of the authorities on the question of the admissibility in evidence of declarations as a part of the *res gestæ*. The leading authorities on this question are reviewed in 1 Rice, Evidence, 362, *et seq.* A large number may also be found in the note to *People v. Vernon,* 35 Cal. 49, 95 Am. Dec. 49. From the numerous and conflicting authorities this court has deduced two rules, which appear to us sufficient for present purposes. In *Union P. R. Co. v. Elliott,* 54 Neb. 299, the rule is thus stated by commissioner RAGAN, and approved by this court:

"A declaration or admission, to be competent evidence. as *res gestæ,* must be made at such a time and under such circumstances as to raise the presumption that it is the unpremeditated and spontaneous explanation of the matter about which made."

In *Hewitt v. Eisenbart,* 36 Neb. 794, this court, speaking through IRVINE, C., say:

"The trial court must be permitted to exercise its discretion, very largely, in determining whether the declarations were made under such circumstances as to permit the inference that they were genuine expressions, and the jury must be left to determine whether or not such inference shall be drawn."

In *Omaha & R. V. R. Co. v. Chollette*, 41 Neb. 578, the foregoing language is reiterated. The doctrine announced in the last two cases has the support of Greenleaf, who, at sec. 108, vol. 1, of his celebrated work on Evidence, says:

"The surrounding circumstances, constituting parts of *res gestæ*, may always be shown to the jury, along with the principal fact, and their admissibility is determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion."

The discretion of the presiding judge in such cases, however, must not be understood as an absolute discretion to be exercised arbitrarily, but as a legal discretion, the abuse of which would constitute reversible error.

Satisfied with the foregoing rules, the question presented in this case is, whether the exclusion of declarations in question was an abuse of discretion. We do not think it was. The plaintiff was before the court and testified to the facts showing how he claimed to have received the injury. His testimony shows that he was not an entirely artless witness; that, although but sixteen years of age, he had traveled over a considerable portion of the country, concealing himself on railway trains, to avoid paying his fare, and that he was thus traveling, or attempting to travel, at the time the accident occurred. Under such circumstances, it would be rash to assume that his declarations, made after the injury, we e the natural and spontaneous expressions of the truth, rather than an attempt to shift the responsibility for his injury to the shoulders of another, to excite sympathy or for other ulterior purposes. It is urged, however, that suffering as he was from a frightful injury at the time he made the declaration, it is

unlikely he would concoct a self-serving declaration. Whether he would be likely or unlikely to concoct such a declaration, would depend largely on his moral habits, the acuteness and readiness of his mental faculties, his fortitude and the intensity of his bodily pain, which would not necessarily be in direct ratio to the seriousness of the injury. Of such matters, the trial court, with the party before it as a witness, was the best judge, and, in the light of all the circumstances shown by the record, we do not think it can be said, as a matter of law, that the exclusion of the testimony, as to his declarations made shortly after the accident, was an abuse of discretion. He was permitted to tell his story under oath, and there was no pressing necessity for the admission of his unsworn statement.

We have not overlooked the case of *Missouri P. R. Co. v. Baier,* 37 Neb. 235, wherein the declarations of an injured party remote, perhaps, in point of time, as those under consideration, were admitted in evidence as part of the *res gestæ.* We can only say of that case, as we have said of this, that, whether such declarations should have been admitted, rested largely in the discretion of the trial court, and, having been admitted, this court held, that the circumstances under which they were made warranted their admission. Besides, in that case, the injured party died shortly after the injury, and could not be produced as a witness on the trial. That fact, in itself, would not render evidence of such declarations admissible, but it is undoubtedly proper to be taken into account by the trial court, in the exercise of its discretion as to the admisssion of such evidence. *Travellers Ins. Co. v. Mosley,* 8 Wall. (U. S.) 397.

The following instructions—the first at the request of the defendant, the other by the court on its own motion—were given the jury:

"You are instructed by the court, if you find from the evidence that Grover C. Pledger on the 24th day of August, 1900, was on the front platform of one of the passenger

cars of a train operated by the defendant company, with the intention of riding upon said train without paying any fare, then and in that case he was not a passenger upon defendant's train and the defendant railroad company, as a common carrier, owed him no duty."

"It is the duty of a person when traveling upon a railroad from one station to another to enter the passenger coaches provided for the carrying of passengers and to remain therein while such train is in motion, and to procure, prior to the entering therein, a ticket from the agent of said company or, if such ticket be not purchased, then to pay the conductor on said train the proper and legal fare. A person doing this and not guilty of misconduct on said train, would be a passenger and the railroad company would be bound under the law to properly care for and attend to the necessary and reasonable conveniences and wants of such passenger and would be *prima facie* liable for any injury that such passenger received while so traveling. But a person riding on the outside of such passenger train, whether on the platform or some other place without, or on parts of the baggage car, for the purpose of obtaining a ride on such train without the payment of any fare therefor, would not be a passenger upon such train, but would be a trespasser thereon and such railroad would owe no duty to such person, and the employees of such company would have the right to put such person off the train and the railroad company would not be liable therefor unless such removal was done in a reckless, careless or negligent manner and the injury, if any, was the result of such negligence."

The plaintiff contends that the foregoing instructions are erroneous, because they ignore the rule that a railroad company is bound to use due care, even in removing a trespasser from its trains, and is liable in damages for any injury resulting to a trespasser from an omission of such duty. Such is undoubtedly the rule. *Kansas City, Ft. S. & G. R. Co. v. Kelly*, 36 Kan. 655, 14 Pac. 172; *Johnson v. Chicago, St. P., M, & O. R. Co.*, 116 Ia. 639, 88 N. W. 811;

*Beems v. Chicago, R. I. & P. R. Co.*, 58 Ia. 150, 12 N. W. 222. But we do not think the charge of the court, taken as a whole, contravenes it. These instructions must be thus taken and read in the light of the rest of the record in the case. The claim was made in the petition that the plaintiff was a passenger on the train; the defendant's theory was that he was a trespasser. These instructions were evidently drawn for the purpose of distinguishing between the relation of a common carrier to its passengers and to trespassers. That the court did not intend the jury to understand that the defendant was under no obligation to refrain from injuring the plaintiff in removing him from the train, even if he were a trespasser, is clear from the other portions of the charge. The fourth paragraph is as follows:

"If you find from the evidence that the plaintiff was traveling upon the train in question, and that for the purpose of avoiding the payment of fare he was riding upon the platform of one of said cars, or other place outside the passenger coach, then the employees of the defendant would have the right to use all force and power necessary to overcome any resistance that might be offered, but they would not have the right to remove him, or push him off, or require him to jump off, at a place where it was unsafe to get off, or at a time when the train was running at such rate of speed that it would be unsafe for a person to get off, and if you find that the plaintiff has established, by a preponderance of the evidence, that the brakeman on said train, or other employee thereon, did push the plaintiff off said train, at a place where it was unsafe to jump off, or at a time when the train was running at a speed when it made such act dangerous, and that the plaintiff was injured thereby, then your verdict must be for the plaintff."

In three other instructions, the foregoing language, touching the duty of the defendant to the plaintiff, even if the latter were merely a trespasser, is, in substance, reiterated. From the charge, taken as a whole, we are satisfied that the jury could not have failed to under-

stand, that, even though the plaintiff were a trespasser on the train, the defendant had no right to remove him at such time, place, or in such a manner, as would be liable to result in his injury.

The defendant requested and the court gave the following instruction:

"You are instructed by the court, it is your imperative duty to try this case and decide the same, as if it were a suit between two individuals. The fact that the person injured was a boy and the defendant a corporation, should make no difference with you in the trial of this action. In considering and deciding this cause, you should look solely to the evidence for the facts and the instructions of the court for the law in the case, and find your verdict accordingly, without any reference to who is plaintiff and who is defendant. The fact that the plaintiff has brought suit in this action constitutes no ground whatsoever on which to base the presumption that he is entitled to a verdict against the defendant. That he is a poor boy constitutes no reason why the plaintiff should be entitled to a verdict. All these things are outside of what you are to consider."

The plaintiff objects to this instruction, because it gives too much prominence to the situation of the parties, and claims that it tended to admonish the jury that they were likely to be criticised if their verdict should be for the plaintiff. We do not think the complaint is well founded. It is the theory of the law, that the verdict of a jury shall be based exclusively on the evidence and the instructions of the court. Such being the law, sympathy has no more legitimate place in a verdict, than in the demonstration of a proposition in Euclid or an experiment in chemistry. This is well known, but at times there is danger that it may be overlooked; and when the trial court feels that such danger exists, there can be no doubt of the propriety of reminding the jury, that in an honest and legitimate search for the truth, sympathy has no place. Another objection to this instruction is based on the closing sentence: "All

these things are outside of what you are to consider." It is claimed that the court having referred to the evidence and its instructions in a former sentence, the closing sentence was a direction to the jury to disregard the evidence and instructions. This objection appears to us to be hypercritical. The jury could not have failed to understand that the closing sentence referred, not to the evidence and the instructions which, in a former sentence, they had been directed to look to exclusively, but to such matters as had been pointed out as improper for them to consider.

The plaintiff also complains of the fourth instruction, given at the request of the defendant. It is as follows:

"One who is injured by the negligence of another can not recover damages therefor if the injured party, by his own negligence or wilful wrong, approximately contributed to the injury so that it would not have happened but for his own fault. If, therefore, you find that said Grover C. Pledger, by his own carelessness, substantially contributed to the injury, or that he might, by the exercise of ordinary care, such as a prudent person generally would have used under similar circumstances, have avoided the injury, he cannot recover damages."

It is urged that this instruction permitted the jury to infer that boarding the car, as the plaintiff was shown to have boarded it, was such fault or wrong as would prevent a recovery in this case, notwithstanding the defendant was guilty of the wrongful acts charged. The instruction must not be taken as standing alone, but in connection with the rest of the charge and the record. The theory upon which the plaintiff asked a recovery was, that he had been pushed from the moving train by one of the defendant's employees, and fell or rolled, so that the wheels of the car passed over his leg. As we have already seen, the jury were fully instructed upon this theory, and, that the defendant had no right to remove him from the train in such a way, or under such circumstances as to endanger his life or person  One theory of the defendant was, that the

plaintiff, in attempting to board the train at an improper place and while in motion, fell with his leg under the wheels. At the place he fell, whether by being pushed off the car or in attempting to board it, there was a pile of cinders. The instruction under consideration appears to have been drawn on the theory that the company might be found guilty of negligence for leaving the pile of cinders on the right of way, if the jury found the plaintiff was not a trespasser. In the light of these theories, and the other instruction given, we do not think the paragraph under consideration is open to the objection urged against it. Another criticism of this instruction is, that it uses the word "approximately" instead of "proximately." The two words are not synonymous, but closely allied in meaning. The use of the former, in the connection in which it appears in this instruction, could not have misled the jury, especially in view of the rest of the charge.

The second instruction given by the court on its own motion is criticised because the jury were thereby directed to consider all the evidence offered in the case. Of course, the jury should have been instructed to consider only such evidence as had been received. But the plaintiff has pointed out no evidence offered which, if considered by the jury, would have been prejudicial to him. On the contrary, the only evidence to which our attention has been called, which was excluded, was the declarations of the plaintiff hereinbefore referred to and which the plaintiff insists should have been received in evidence and considered by the jury. He certainly is not in a position to complain, if the jury, acting upon this instruction in question, considered that evidence. Besides, the likelihood that the jury could have been misled by the instruction, to us, appears exceedingly remote.

Complaint is made of the fifth paragraph of the charge to the jury, because the jury were thereby instructed that if the plaintiff, in running to catch the train, or in attempting to get on the platform or other part of the train for the purpose of avoiding the payment of car fare, fell

over obstructions, and by reason of such obstructions he fell or rolled under the train and was injured thereby, the defendant was not liable for negligence on account of leaving such obstructions on its right of way. We think this instruction was proper. It was based on the defendant's theory of the case, which was supported by evidence, that the plaintiff was a trespasser. The instruction in effect is, that the defendant was not bound to keep its right of way in a safe condition for the benefit of trespassers. It would be carrying the doctrine of negligence altogether too far to hold that a railroad company is compelled to keep its right of way free from obstructions, for the benefit of persons attempting to board its trains intending to evade the payment of their fares.

Another criticism of this instruction is, that there is no evidence that the plaintiff was running and trying to board the train. This is a mistake. One witness, a passenger on the train, testifies to having seen someone running at the side of the train just before the accident. The circumstances detailed, taken with other facts in the case, were sufficient to warrant the inference that the person thus running was the plaintiff, and were a sufficient basis for the instruction.

Misconduct of the jury is one of the errors assigned for reversal of this case. It is claimed that such misconduct is shown by affidavits filed in the district court. They have not been pointed out in the bill of exceptions, nor in our examination of it have we been able to find them there. It is well settled, that affidavits, to be available in this court, must be incorporated into the bill of exceptions. As they were not thus preserved, we are unable to determine whether there was misconduct on the part of the jury.

We find no reversible error in the record, and it is therefore recommended that the judgment of the district court be affirmed.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.